## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| STEPHEN BUSHANSKY, | ) Civil Action No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE** |
| | ) **FEDERAL SECURITIES** |
| | ) **LAWS** |
| EVO PAYMENTS, INC., JAMES G. | ) |
| KELLY, RAFIK R. SIDHOM, VAHE | ) **JURY TRIAL DEMANDED** |
| A. DOMBALAGIAN, MARK A. | ) |
| CHANCY, JOHN S. GARABEDIAN, | ) |
| NIKKI T. HARLAND, DAVID W. | ) |
| LEEDS, LAURA M. MILLER, | ) |
| STACEY V. PANAYIOTOU, | ) |
| GREGORY S. POPE, and MATTHEW | ) |
| W. RAINO, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against EVO Payments, Inc. ("EVO" or the "Company") and the members of its Board of Directors (the

"Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which EVO will be acquired by Global Payments Inc. ("Global") through its subsidiary Falcon Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On August 1, 2022, EVO and Global issued a joint press release announcing entry into an Agreement and Plan of Merger dated August 1, 2022 (the "Merger Agreement") to sell EVO to Global.  Under the terms of the Merger Agreement, EVO stockholders will receive $34.00 in cash for each share of EVO common stock (the "Merger Consideration").  The Proposed Transaction is valued at approximately $4 billion.

3.     On September 6, 2022, EVO filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that EVO stockholders vote in favor of the Proposed Transaction, omits, or misrepresents material information concerning, among other things: (i) EVO management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Citigroup

Global Markets Inc. ("Citi"); and (iii) Citi's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, EVO's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Defendant EVO is headquartered in this district, rendering venue in this district appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of EVO.

9.      Defendant EVO is a Delaware corporation, with its principal executive offices located at Ten Glenlake Parkway, South Tower, Suite 950, Atlanta, Georgia 30328.   The Company operates as an integrated merchant acquirer and payment processor in the Americas and Europe.   EVO's common stock trades on the Nasdaq Global Market under the ticker symbol "EVOP."

10.      Defendant James G. Kelly ("Kelly") has been Chief Executive Officer ("CEO") of the Company since its formation, and a director since May 2018. Defendant Kelly previously served as President and Chief Operating Officer ("COO"), Senior Executive Vice President, and Chief Financial Officer ("CFO") of Global.

11.     Defendant Rafik R. Sidhom ("Sidhom") has been Chairman of the Board since May 2018 and a director of the Company at all relevant times.

12.     Defendant Vahe A. Dombalagian ("Dombalagian") has been a director of the Company since May 2018.

13.     Defendant Mark A. Chancy ("Chancy") has been a director of the Company since March 2020.

14.     Defendant John S. Garabedian ("Garabedian") has been a director of the Company since May 2018.

15.     Defendant Nikki T. Harland ("Harland") has been a director of the Company since March 2022.

16.     Defendant David W. Leeds ("Leeds") has been a director of the Company since July 2018.

17.     Defendant Laura M. Miller ("Miller") has been a director of the Company since September 2019.

18.     Defendant Stacey V. Panayiotou ("Panayiotou") has been a director of the Company since August 2021.

19.     Defendant Gregory S. Pope ("Pope") has been a director of the Company since May 2018.

20.    Defendant Matthew W. Raino ("Raino") has been a director of the Company since April 2020.

21.    Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.    Global is a leading payments technology company delivering innovative software and services to customers globally.  Its technologies, services, and team member expertise allow Global to provide a broad range of solutions that enable customers to operate their businesses more efficiently across a variety of channels around the world.  Headquartered in Georgia with approximately 25,000 team members worldwide, Global is a Fortune 500® company and a member of the S&P 500 with worldwide reach spanning over 170 countries throughout North America, Europe, Asia Pacific, and Latin America.

23.    Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

24.    Founded in 1989, EVO is a global merchant acquirer and payment processor servicing more than 550,000 merchants and processing approximately

4.2 billion transactions annually.  The Company helps enable electronic commerce globally with local operations in 12 countries and the ability to serve over 50 markets around the world.  EVO differentiates itself from competitors through (1) a highly productive and scaled sales distribution network, including exclusive global financial institution and tech-enabled referral partnerships, (2) its three proprietary, in-house processing platforms that are connected by a single point of integration, and (3) a comprehensive suite of payment and commerce solutions, including integrated software, at the physical point-of-sale ("POS"), eCommerce, and business-to-business ("B2B") solutions.  These points of differentiation allow the Company to deliver strong organic growth, increase market share, and attract additional relationships with financial institutions, technology companies, and other strategic partners.

25.    EVO classifies its business into two segments: the Americas and Europe.  The Americas segment includes Company operations in the United States, Canada, Mexico, and Chile.  In the United States and Canada, where card penetration rates are among the highest in the world, EVO is focused on driving growth from the changing trends in payment technologies, including the increased adoption of software at the POS for retail and B2B transactions.  The Europe segment includes operations in Poland, Germany, Ireland, the United Kingdom,

Spain, and the Czech Republic, as well as EVO support of merchants in surrounding markets.

26.     On August 1, 2022, the Company announced its second quarter 2022 financial results.   For the quarter ended June 30, 2022, reported revenue was $137.7 million compared to $122.2 million in the prior year, an increase of 13%. On a currency neutral basis, revenue for the quarter increased 18%.  On a GAAP basis for the quarter, net income was $11.3 million compared to $6.8 million in the prior year, an increase of 66%.  Adjusted EBITDA increased 21% to $51.7 million for the quarter, and margin of 37.6% expanded 250 basis points. On a currency neutral basis, adjusted EBITDA increased 26%.  For the six months ended June 30, 2022, reported revenue was $264.6 million compared to $228.4 million in the prior year, an increase of 16%.   On a currency neutral basis, revenue for the year increased 20%.   On a GAAP basis for the year, net income was $16.4 million compared $4.0 million in the prior year, an increase of 315%.  Adjusted EBITDA increased 20% to $91.7 million for the year, and on a currency neutral basis, adjusted EBITDA increased 24%.  Reflecting on the Company's results, defendant Kelly stated:

> I am pleased with our strong results again this quarter which were largely attributable to growth from our international markets and global tech-enabled channels as we expanded our referral networks, signed new merchants, and deepened existing relationships.  I am

excited about the merger of Global Payments and EVO, which is a testament to the strong foundation established by our founders Ray Sidhom, Chairman, and Jeff Rosenblatt, Executive Vice-Chairman, that has allowed us to grow EVO into an international company with more than 2,400 colleagues around the world.   The transaction announced today will further enhance our resources and product capabilities and enable the combined organization to deliver leading payment solutions for merchants across our global markets.

## **The Proposed Transaction**

27.   On August 1, 2022, EVO and Global issued a joint press release

announcing the Proposed Transaction, which states, in relevant part:

ATLANTA--(BUSINESS WIRE)-- Global Payments Inc. (NYSE: GPN), a leading worldwide provider of payment technology and software solutions, and EVO Payments, Inc. (NASDAQ: EVOP), a leading global provider of payment technology integrations and acquiring solutions, today announced that Global Payments will acquire EVO in an all-cash transaction for $34.00 per share.

The transaction will significantly increase Global Payments' target addressable markets, further enhance its leadership in integrated payments worldwide, expand its presence in new and existing faster growth geographies, and augment its B2B software and payment solutions with the addition of accounts receivable software with broad third-party acceptance.

"The acquisition of EVO is highly complementary to our technology-enabled strategy and provides meaningful opportunities to increase scale in our business globally," said Cameron Bready, President and Chief Operating Officer, Global Payments.  "Together with EVO, we are positioned to deliver an unparalleled suite of distinctive software and payment solutions to our combined 4.5 million merchant locations and more than 1,500 financial institutions worldwide."

The transaction will expand Global Payments' geographic footprint

into attractive new geographies such as Poland, Germany, Chile, and upon closing, Greece, as well as enhance its scale in existing markets, including the United States, Canada, Mexico, Spain, Ireland and the United Kingdom.

The acquisition will also add leading accounts receivable automation software capabilities that complement Global Payments' existing B2B and accounts payable offerings.  Further, EVO will bring an array of key technology partners and proprietary integrations, including with the most widely used ERP software providers.

"Joining EVO and Global Payments will unite highly complementary portfolios of technology-enabled products and partnerships to create an even stronger organization serving a broader customer base," added Jim Kelly, Chief Executive Officer, EVO.   "Over the last decade, the EVO team has worked diligently to advance our innovative solutions, strengthen the service we provide to our bank and technology-enabled partners, and grow our global footprint.  This transaction is an achievement for our company, and we believe it delivers compelling value to our shareholders and accelerates our growth opportunities."

Transaction Details

The transaction has been unanimously approved by each company's Board of Directors.  Pursuant to the terms of the merger agreement, Global Payments will acquire the outstanding equity of EVO for $34.00 per share in cash ($4.0 billion of enterprise value for EVO). The purchase price represents a premium of approximately 24% and 40% to EVO's last closing price and to its 60-day average price, respectively, as of July 29, 2022.

Global Payments expects to finance the acquisition with cash on hand and a committed bank facility.  Silver Lake will make a strategic investment of $1.5 billion in Global Payments in the form of a convertible note.  In connection with the investment by Silver Lake, and subject to market conditions and other factors, Global Payments expects to enter into a call spread or other derivative transaction designed to raise the effective conversion premium of the convertible

note.

The transaction, which is subject to EVO stockholder approval, regulatory approvals and other customary closing conditions, is expected to deliver $125 million of run-rate synergies and be accretive in the first year after close. The transaction is expected to close no later than the first quarter of 2023.

Certain investment funds affiliated with Madison Dearborn Partners, LLC and other EVO stockholders have entered into voting agreements pursuant to which they have agreed, among other things, to vote their shares of EVO stock in favor of the transaction, subject to certain conditions. These stockholders currently represent approximately 22% of the voting power of EVO's stock.

Advisors

BofA Merrill Lynch and J.P. Morgan Securities LLC are serving as financial advisors to Global Payments and have provided committed financing. Goldman, Sachs & Co., Barclays, Evercore and Greenhill & Co, Inc. have also provided financial advice to Global Payments. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Global Payments.

Citi is serving as financial advisor to EVO and King & Spalding LLP is serving as EVO's legal advisor.

## Insiders' Interests in the Proposed Transaction

28.     EVO insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of EVO.

29.    Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Global.  Pursuant to the Merger Agreement, all outstanding Company options, restricted stock units ("RSUs") and performance-based restricted stock units ("PSUs") will convert into the right to receive cash payments upon a qualifying termination in connection with the merger.  The following table sets forth the cash payments Company insiders stand to receive in connection with their equity awards upon a qualifying termination in connection with the merger:

| Named Executive Officer | EVO RSUs (#) | EVO RSUs ($) | EVO PSUs (#) | EVO PSUs ($) | EVO Options (#) | EVO Options ($) |
|---|---|---|---|---|---|---|
| James G. Kelly | 139,383 | 4,739,022 | 116,694 | 3,967,596 | 169,012 | 1,456,541 |
| Thomas E. Panther | 45,776 | 1,556,384 | 32,082 | 1,090,788 | 57,471 | 457,277 |
| Michael L. Reidenbach | 40,144 | 1,364,896 | 31,712 | 1,078,208 | 42,358 | 365,427 |
| Brendan F. Tansill | 41,231 | 1,401,854 | 32,714 | 1,112,276 | 43,095 | 371,721 |
| Darren Wilson | 41,231 | 1,401,854 | 32,714 | 1,112,276 | 43,095 | 371,721 |

30.    Moreover, if they are terminated in connection with the Proposed Transaction, EVO's named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Total ($) |
|---|---|---|---|
| James G. Kelly | 3,845,000 | 10,163,159 | 14,008,159 |
| Thomas E. Panther | 919,000 | 3,104,449 | 4,023,449 |
| Michael L. Reidenbach | 1,380,901 | 2,808,531 | 4,189,432 |
| Brendan F. Tansill | 564,040 | 2,885,851 | 3,449,891 |
| Darren Wilson | 560,844 | 2,885,851 | 3,446,695 |

## The Proxy Statement Contains Material Misstatements or Omissions

31.    The defendants filed a materially incomplete and misleading Proxy

Statement with the SEC and disseminated it to EVO's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) EVO management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Citi; and (iii) Citi's potential conflicts of interest.

***Material Omissions Concerning EVO Management's Financial Projections***

33.    The Proxy Statement omits material information regarding Company management's financial projections.

34.    Specifically, with respect to EVO management's financial projections, the Proxy Statement fails to disclose the line items underlying: (i) Adjusted EBITDA; (ii) Adjusted Net Income Per Share; and (iii) Unlevered After-Tax Free Cash Flows.

35.    The omission of this information renders the statements in the "Management Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Financial Analyses***

36.     Additionally, the Proxy Statement describes Citi's fairness opinion
and the various valuation analyses performed in support of its opinion.  However,
the description of Citi's fairness opinion and analyses fails to include key inputs
and assumptions underlying these analyses.  Without this information, as described
below, EVO's public stockholders are unable to fully understand these analyses
and, thus, are unable to determine what weight, if any, to place on Citi's fairness
opinion in determining whether to vote in favor of the Proposed Transaction or
seek appraisal.

37.     With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy
Statement fails to disclose: (i) quantification of the standalone unlevered after-tax
free cash flows of EVO in the terminal year, utilized to derive the terminal value in
the analysis; (ii) quantification of the inputs and assumptions underlying the
discount rate range of 10.25% to 11.50%; (iii) quantification of EVO's net debt
utilized in the analysis; (iv) quantification of EVO's non-controlling interests in
consolidated entities utilized in the analysis; (v) quantification of EVO's
investments in equity securities utilized in the analysis; and (vi) EVO's common
stock outstanding on a fully diluted basis.

38.     The omission of this information renders the statements in the

"Opinion of EVO's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Potential Conflicts of Interest***

39.    The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Citi.

40.    The Proxy Statement sets forth that:

> As the Board was also aware, although Citi and its affiliates have not provided investment banking, commercial banking or other similar financial services to Parent during the past two years for which Citi and its affiliates received compensation, Citi and its affiliates in the future may provide such services to Parent and/or its affiliates, for which services Citi and its affiliates would expect to receive compensation.

Proxy Statement at 55. The Proxy Statement, however, fails to disclose whether Citi and its affiliates provided investment banking, commercial banking or other similar financial services to Parent during the two years prior to issuing its fairness opinion where no compensation was received and, if so, the specific nature of these services and the compensation Citi and its affiliates expect to receive for providing these services to Parent.

41.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42.    The omission of this information renders the statements in the "Opinion of EVO's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other EVO stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44.    Plaintiff repeats all previous allegations as if set forth in full.

45.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresents and/or omits material facts, including material information about EVO management's financial projections, the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Citi, and Citi's potential conflicts of interest   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.    Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of EVO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of EVO, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise

- 18 -

to the securities violations as alleged herein and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

54.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, EVO's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of EVO, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to EVO stockholders;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 20, 2022                **WEISS LAW**

/s/ Michael A. Rogovin
Michael A. Rogovin
Georgia Bar No. 780075
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel.: (404) 692-7910
Fax: (212) 682-3010
mrogovin@weisslawllp.com

*Attorneys for Plaintiff*